UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  11-14429-CIV-MOORE
           (06-14029-CR-MOORE)
MAGISTRATE JUDGE P.A. WHITE

DERRICK COOPER,                    :

         Movant,                   :

v.                                 :          REPORT OF
                                          MAGISTRATE JUDGE
UNITED STATES OF AMERICA,          :

         Respondent.               :
_____

<u>Introduction</u>

        This matter is before this Court on the movant's motion to
vacate pursuant to 28 U.S.C. §2255, attacking his conviction and
sentence entered in Case No. 06-14029-Cr-Moore.

        This Cause has been referred to the undersigned for
consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and
Rules 8 and 10 of the Rules Governing Section 2255 Cases in the
United States District Courts.

        The Court has reviewed the motion [CV-DE#1], the government's
response [CV-DE#9], Movant's reply [CV-DE#11], the evidence
presented at the hearing on this matter, the stipulated findings of
fact of the parties [CV-DE#41], and all pertinent portions of the
underlying criminal file.

<u>Claims</u>

        In <u>Ground One</u>, Movant alleges that he is entitled to
        equitable tolling of the AEDPA's limitations period.

        In <u>Ground Two</u>, Movant alleges that he was denied his
        right to the effective assistance of counsel during the
        plea-bargaining process.

In <u>Ground Three</u>, Movant alleges that he was denied his right to a fair trial, an impartial jury, and to the effective assistance of counsel when his trial counsel failed to investigate allegations of juror misconduct.

In <u>Ground Four</u>, Movant alleges that he was denied his right to a fair trial, an impartial jury, and to the effective assistance of counsel when his trial counsel failed to object to him being shackled during trial.

In <u>Ground Five</u>, Movant alleges that he was denied a fair appellate process because the transcripts containing the closing arguments of the parties and the court's instructions to the jury were not preserved, and that he was denied his right to the effective assistance of counsel when his trial counsel failed to withdraw as appellate counsel from Movant's representation on appeal.

<u>Procedural History and Background</u>

Movant was charged with one count of conspiracy to possess with intent to distribute 50 or more grams of crack cocaine, and one substantive count of possession with intent to distribute 50 or more grams of crack cocaine [CR-DE#22]. Several co-defendants were also named in the indictment [<u>Id.</u>]. From the inception of the case, the government took the position that Movant was subject to statutorily-enhanced penalties of mandatory life imprisonment based on Movant having two or more prior felony drug convictions [<u>See</u> CR-DE#1; CR-DE#94, ¶4; CV-DE#11, Exh.C].

Movant was initially represented Stephen J. Rogers, Esq. [DE#9]. In a letter dated August 29, 2006 to Mr. Rogers, the government extended a plea offer to Movant [CV-DE#11, Exh.C]. The letter stated that, if Movant accepted the government's proposed plea agreement, the government would seek a sentencing enhancement based on only one of Movant's prior felony drug convictions, thereby reducing Movant's statutory minimum mandatory sentence to 20 years [<u>Id.</u>]. The government also offered to seek only a three-level enhancement of Movant's base offense level under the Sentencing Guidelines for Movant's role in the offense as manager

2

or supervisor, although the government believed that the evidence supported a four-level increase as organizer or leader [Id.].

On September 19, 2006, Michael D. Walsh, Esq. filed a Notice of Appearance as Co-Counsel for Movant [CR-DE#93]. On the same date, Mr. Walsh also filed a Motion to Continue the Trial Date,[1] and a Notice of Defense Based Upon Public Authority Pursuant to Rule 12.3 [CR-DE##94, 96].

On September 25, 2006, Mr. Rogers moved to withdraw as counsel for Movant [CR-DE#104]. On September 26, 2007, the government filed Previous Conviction Information pursuant to § 851, giving notice that Movant was subject to a statutorily-enhanced penalty of mandatory life based on having two prior felony drug convictions [CR-DE#109]. Later, the court granted Mr. Walsh's Motion to Continue, and Mr. Rogers was permitted to withdraw [CR-DE#107 & 125].

In December of 2006, Movant and one of his co-defendants, Deshone Stacey, proceeded to trial [CR-DE##268-74]. Movant was represented by Mr. Walsh at trial, and was convicted of both of the counts against him [CR-DE#173].

Prior to sentencing, Movant filed a Motion for New Trial Based on Newly Discovered Evidence of Juror Misconduct and Motion for Post-Trial Interview [CR-DE#211]. The district judge denied Movant' motion, as well as Movant's Motion for Reconsideration [CR-DE##237, 243].

Movant appeared for sentencing on September 4, 2007, and was sentenced to life in prison [CR-DE##263, 264 & 357]. Movant then filed a timely notice of appeal [CR-DE#266].

On July 24, 2009, the Court of Appeals issued its decision affirming Movant's convictions and sentences, as well as the denial of Movant's motion for a new trial. United States v. Stacey, 337

---

[1]At that point, trial was scheduled to commence on October 2, 2006.

3

Fed.Appx. 837 (11th Cir. 2009).  The mandate issued on August 24, 2009 [CR-DE#372].  Thereafter, Movant filed a petition for a writ of certiorari to the Supreme Court, which was denied on November 30, 2009.  Cooper v. United States, 130 S.Ct. 764 (2009).

During the pendency of Movant's appeal, Movant filed two additional motions for a new trial [CR-DE##322, 358].  The district court deferred ruling on these motions pending the disposition of Movant's appeal.  See United States v. Cooper, 416 Fed.Appx. 52, 53 (11th Cir. 2011).

Once Movant's appeal was concluded, the district court denied Movant's two additional pending motions for a new trial.  Id. Movant filed a timely notice of appeal from the denial of these two motions [CR-DE#435].  On February 14, 2011, the Court of Appeals affirmed the district court's denial of Movant's two additional motions for a new trial.  Id. at 56.  The mandate issued on April 11, 2011 [CR-DE#445].

On December 5, 2011, Movant filed the instant motion to vacate pursuant to §2255.

Threshold Issue - Timeliness

In Ground One, Movant alleges that he is entitled to equitable tolling of the AEDPA's limitations period.

Pursuant to 28 U.S.C. §2255(f), as amended April 24, 1996, a one-year period of limitations applies to a motion to vacate by a prisoner in custody under sentence of a court established by an Act of Congress.  The limitations period runs from the latest of:

> (1)  the date on which the judgment becomes final;
>
> (2)  the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant is prevented from filing by such governmental action;

(3)   the date on which the right asserted was
initially recognized by the Supreme
Court, if that right has been newly
recognized by the Supreme Court and made
retroactively applicable to cases on
collateral review; or

(4)   the date on which the facts supporting
the claim or claims could have been
discovered through the exercise of due
diligence.

In this case, the parties agree that the statute of
limitations runs from the date on which Movant's judgment of
conviction became final.   In such cases, the AEDPA "marks finality
as of 'the conclusion of direct review of the expiration of the
time for seeking such review[.]'" Gonzalez v. Thaler, ___ U.S. __
__, 132 S.Ct. 641, 653, 181 L.Ed.2d 619 (2012).   Where, as here,
the prisoner has pursued a direct appeal, the judgment of
conviction becomes final when the United States Supreme Court
denies certiorari, issues a decision on the merits, or when the
ninety-day period in which to file for certiorari expires.   See
Clay v. United States, 537 U.S. 522, 532 (2003); Nix v. Sec'y for
the Dep't of Corr., 393 F.3d 1235, 1236-37 (11th Cir. 2004).

Here, Movant's judgment of conviction became final on November
30, 2009, when the Supreme Court denied his petition for a writ of
certiorari seeking review of the Eleventh Circuit's decision
affirming Movant's conviction and sentence, as well as the denial
of his first motion for a new trial.   Movant's second and third
motions for a new trial, which he filed while his direct appeal was
pending, were not a continuation or extension of his direct appeal.
Barnes v. United States, 437 F.3d 1074, 1079 (11th Cir. 2006).
Therefore, they did not have any tolling effect, nor any effect on
when Movant's judgment of conviction became final.   Id.   Movant
thus had until November 30, 2010, which is one year from the date
that the Supreme Court denied his petition for a writ of

certiorari, to timely file a motion to vacate pursuant to §2255. See Id. However, as set forth above, Movant did not file the instant motion until December 15, 2011.

Movant does not dispute that his motion was filed more than one year after his judgment of conviction became final, and is therefore untimely under §2255(f)(1). Movant contends, however, that he is entitled to equitable tolling of the AEDPA's limitations period because he received gross misadvice from counsel [See, generally, DE#1, Ground One & supporting exhibits]. Specifically, Movant has affirmed that Mr. Walsh retained Movant's files throughout the pendency of Movant's appeal of the denial of his second and third motions for a new trial, and that Mr. Walsh told Movant that Movant could not file a §2255 motion until the appeal of the denial of those motions was concluded [Id.]. Movant has also affirmed that his family retained another attorney, Paul Luskin, to prepare Movant's §2255 motion for him before the AEDPA's limitations had in fact expired, but that Mr. Luskin essentially re-iterated Mr. Walsh's misadvice [Id.]. In addition, Movant has provided copies of letters from Matthew J. Trocolli, Esq., who was apparently working with Mr. Walsh on Movant's case at the time, as well as letters from Mr. Luskin, that corroborate Movant's allegations [Id.].

If a defendant files a motion to vacate beyond the one-year limitation period, the district court may still review the untimely motion under certain circumstances. As the Supreme Court has explained, the time period specified in the AEDPA is a statute of limitations, not a jurisdictional bar, and permits equitable tolling in an appropriate case. See Holland v. Florida, 560 U.S. ----, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010).

In order for a defendant to establish that he is entitled to equitable tolling, he must show that: (1) he acted with reasonable diligence; and (2) "some extraordinary circumstance stood in his

way and prevented timely filing." Holland, 130 S.Ct. at 2562 (internal quotation marks omitted); see also Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999)(per curiam)(holding that equitable tolling is available "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence"). "The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" Holland, 130 S.Ct. at 2565 (internal quotation marks and citation omitted). As for the "extraordinary circumstance" prong, the applicable standards require a defendant to show a causal connection between the alleged extraordinary circumstances and the late filing of the federal petition. See San Martin v. McNeil, 633 F.3d 1257, 1267 (11th Cir. 2011).

Serious instances of attorney misconduct can, in appropriate cases, warrant equitable tolling of the AEDPA's limitations period. Holland, 130 S.Ct. at 2563-65. The Supreme Court has re-iterated that a "garden variety claim of excusable neglect," such as the miscalculation of a deadline, will not support a tolling claim. Id. at 2564, quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990). However, the Supreme Court has also held that, in some instances, grossly negligent professional misconduct "could nonetheless amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling. Id. at 2563.

Here, Movant's verified allegations and corroborating documentation establish that Movant was reasonably diligent in pursuing his §2255 rights. The advice Movant received from counsel with regard to the timing of Movant's motion, however, could not have been more erroneous. Specifically, at that point, the Eleventh Circuit's decision in Barnes, supra, had long-been decided. Barnes clearly held that a Rule 33 motion for a new trial

has no tolling effect on the AEDPA's limitations period nor any effect on when a judgment of conviction becomes final. Barnes, 437 F.3d at 1079. Moreover, the relevant procedural facts of Barnes were virtually identical to those of Movant's case. See Id. at 1076. Minimal legal research by any competent lawyer at the time would therefore have revealed that the limitations period began running when the Supreme Court denied Movant's petition for a writ of certorari, and that Movant should not await resolution of the appeal of the denial of his second and third motions for a new trial to file his motion under §2255. However, it is undisputed that Movant received exactly the opposite advice.

The government has elected not to challenge the time-bar due to the unique circumstances of this case, and submits that Movant should be given the benefit of equitable tolling [DE#9, pp.9-10]. The court agrees that Movant is entitled to equitable tolling under the particular facts of this case. The government's concession is, therefore, well-taken. Consequently, Movant is entitled to consideration of his claims on the merits. See Holland 130 S.Ct. at 2560, 2563 (AEDPA's limitations period is non-jurisdictional defense subject to waiver; egregious professional misconduct can create extraordinary circumstance warranting equitable tolling).

Discussion

*Standard of Review*

Pursuant to 28 U.S.C. §2255, a prisoner in federal custody may move the court which imposed sentence to vacate, set aside or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. §2255. If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the

sentence as may appear appropriate." Id. To obtain this relief on collateral review, however, a habeas petitioner must "clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)(rejecting the plain error standard as not sufficiently deferential to a final judgment).

Under §2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. §2255; see also Smith v. Singletary, 170 F.3d 1051, 1053 (11th Cir. 1999)("[a] habeas corpus petitioner is entitled to an evidentiary hearing on his claim 'if he alleges facts which, if proven, would entitle him to relief.'" )(internal citation omitted). However, the movant in a §2255 proceeding must allege reasonably specific, non-conclusory facts that, if true, would entitle him to relief. Aron v. United States, 291 F.3d 708, 715, n. 6 (11th Cir. 2002). Otherwise, no evidentiary hearing is warranted. Id. at 714-715 (explaining that no evidentiary hearing is needed when claims are "affirmatively contradicted by the record" or "patently frivolous"); Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989)(noting that a hearing is not required on claims which are based upon unsupported generalizations or affirmatively contradicted by the record).

*Evidentiary Hearing Claim*

In Ground Two, Movant alleges ineffective assistance of counsel during the plea-bargaining process. In his motion, Movant couched this claim as one of ineffective assistance of counsel based on Mr. Walsh's decision to pursue a "public authority" defense at trial. Specifically, Movant alleged that, had Mr. Walsh conducted a reasonable investigation, Walsh would have known that the evidence did not support a "legally cognizable" public

authority defense.  Movant further contended that he informed Walsh
of the plea offer that had been extended by the government, but
that Walsh opposed any negotiations.  According to Movant, Walsh's
recommended strategy of rejecting the plea offer and proceeding to
trial on a public authority defense resulted in Movant admitting to
every element of the offenses charged and, consequently, being
convicted at trial and sentenced to life.  In keeping with the
dictates of Haines v. Kerner, 404 U.S. 519 (1972) that a pro se
litigant's pleadings be construed liberally the court thus
construed Movant's claim asserted in Ground Two as alleging a claim
that Mr. Walsh was ineffective during the plea-bargaining process.[2]
Because the motion and record did not conclusively show that Movant
was entitled to no relief on this claim, the court appointed
counsel for Movant and set the matter for an evidentiary hearing
[CV-DE#13; see also CV-DE#23].

On January 31, 2013, the court conducted evidentiary
proceedings on Movant's claim that Mr. Walsh was ineffective during
the plea-bargaining process [CV-DE#31; see also CV-DE##39, 43].  At
the hearing, Movant testified on his own behalf [See CV-DE#43].
The government then called Movant's first lawyer in the underlying
criminal case, Stephen J. Rogers [Id.].   After Mr. Rogers'
testimony, the government called Mr. Walsh [CV-DE#39].  Based on
Mr. Walsh's testimony, and prior to the conclusion of the hearing,
the parties requested additional time to determine if a resolution
could be reached [CV-DE#33; see also CV-DE#39].  The court granted
the parties' request, and the proceedings were therefore recessed
[CV-DE#39].

_____

[2]Movant's allegations regarding ineffectiveness during the plea-
bargaining process become apparent for the first time in his reply.  [See
DE#11, pp.14-16; DE#11, Exh.A, ¶¶7, 8, 9 & 10; DE#11, Exh.C].  However,
Movant's allegations of ineffectiveness in the plea-bargaining process are
related to the claim Movant originally raised in Ground Two of his motion,
which is that Mr. Walsh was ineffective in pursuing a non-viable defense at
trial.

10

On February 27, 2013, at the parties' request, the court conducted a status conference in this matter [See DE#38]. At the status conference, the government announced that it rested on the record as it stood at the conclusion of the evidentiary proceedings conducted on January 31, 2013. The government further effectively conceded that, based on Mr. Walsh's own testimony, Mr. Walsh's performance during the plea-bargaining process was deficient, and that Movant was prejudiced thereby. The parties thus agreed to submit stipulated findings of fact based upon the evidence and testimony introduced at the evidentiary hearing held on January 31, 2013. Those stipulations are as follows:

> 1.   On June 8, 2006, movant was charged by way of indictment with conspiracy to possess with intent to distribute 50 grams or more of crack cocaine and possession with intent to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 [CR-DE#22].
>
> 2.   Movant retained attorney Stephen J. Rogers to represent him. Rogers obtained a copy of the discovery in the case, which was voluminous and consisted of thousands of pages of documentary evidence as well as numerous recordings obtained from a court authorized wiretap. Rogers reviewed the discovery and familiarized himself with the government's evidence against movant.
>
> 3.   On August 29, 2006, the government tendered a written, proposed plea offer/agreement to Rogers for movant. A copy of the cover letter that accompanied the proposed plea agreement was introduced during the evidentiary hearing as Defendant's Exhibit 2 and is attached and incorporated by reference into these findings. The letter advised that, if not accepted by September 8, 2006, the offer would be withdrawn. The proposed plea agreement itself, which was signed by movant on August 7, 2006, was introduced as Defense Exhibit 3 and is also attached and incorporated by reference. Under the terms of the letter and the plea agreement, the government agreed that if movant pled guilty to Count One of the indictment, the conspiracy count, it would dismiss the remaining counts against movant at sentencing. In addition, the government would

agree to file a statutory sentencing enhancement pursuant to 21 U.S.C. § 851 based on only one of movant's prior convictions, rather than multiple convictions. This would result in movant facing a statutory mandatory minimum sentence of 20 years, rather than a mandatory life sentence. The plea agreement also contained a stipulation stating that, although not binding on the probation office or the Court, the parties would jointly recommend that, for purposes of sentencing, the quantity of narcotics attributable to movant was at least 150 grams but less than 500 grams of crack cocaine.  The parties further agreed that, based on his role as manager or supervisor of the criminal activity involving five or more participants, movant would receive a three level sentencing enhancement pursuant to Section 3B1.1 of the sentencing guidelines.

4.   Prior to expiration of the deadline, Rogers visited with movant at the Federal Detention Center (FDC) in Miami, Florida and reviewed the terms of the proposed plea agreement with him. At the conclusion of their meeting, movant indicated that he was likely going to accept the government's plea offer, but wanted to have time to consult with members of his family before Rogers contacted the government.   Rogers told movant that he would probably be able to get the government to extend the deadline. Because the deadline was fast approaching, and because Rogers advised that he would be unable to travel back down to FDC before that date, movant executed the plea agreement and provided the signed copy to Rogers with the understanding that Rogers would provide it to the government if, after consulting with his family, he had not changed his mind and would accept the offer.

5.   Following movant's meeting with Rogers at FDC, a fellow inmate who was represented by attorney Michael D. Walsh, suggested that movant speak with Walsh about his case.   Movant contacted Walsh who came to FDC shortly thereafter and met with movant.   During their meeting, movant informed Walsh about the government's proposed plea agreement.  Walsh strongly advised movant to reject the offer because Walsh was confident that, despite such an agreement, Judge Moore would sentence him to "forty plus years." [See transcript of Walsh testimony, p. 5. ln. 14, attached hereto as Exhibit A.]   According to Walsh, he advised movant:

I told him that based upon my experience with Judge
Moore, based on the guidelines at the time, based
on the evidence you were saying you had, I thought
he was going to get railed.  I thought he was going
to get forty plus years.  I think with that amount
of crack at the time, pre Goll (sic) and all those
other cases, that Judge Moore would have launched
him and that he would go to prison for three
decades or more based upon his priors.

Id. at p.5, lns. 11-18.

At the time that Walsh made these statements to movant,
he had not seen or reviewed any of the discovery in the
case and was unfamiliar with the evidence against movant.
This was supported by Rogers who testified that he
attempted to transfer the discovery to Walsh, but Walsh
would not accept it until his financial arrangements with
movant had been finalized.  According to Walsh, although
movant expressed his dissatisfaction with having to serve
20 years in prison, he at all times wanted to plead
guilty.[3]  According to Walsh's testimony, movant never
wanted a trial in this case and always wanted to plead
guilty, but proceeded to trial based on Walsh's counsel
that Judge Moore would not honor the plea agreement.  "It
was always Mr. Cooper's intention of entering into a
plea.  It was always my advice that the plea under that
contract that was being put in front of him would never
have been honored."

6.  During this initial meeting between Walsh and movant,
Walsh learned that movant had been working as a
confidential informant for the Miami-Dade Police
Department.  Without reviewing any of the discovery in
the case and without an understanding of the underlying
evidence against movant that had led to the charges
against him, Walsh advised movant that he had a viable
"public authority" defense to the charges.

7.  Based upon Walsh's advice, Cooper fired Rogers as his
attorney and hired Walsh, thereby effectively rejecting
the government's plea offer.  Movant testified that Walsh
helped him draft the letter of termination to Rogers and

---

[3]Walsh testified that movant wanted to take a plea but not the plea the
government was offering.  However, he later testified that throughout his
representation of movant, movant always wanted to plead guilty.  See Exhibit
A, p. 18, ln. 13.

faxed it to Rogers for him. Shortly thereafter, Walsh filed his notice of appearance on behalf of movant as well as formal Notice of Defense Based Upon Public Authority [CR-DE 98]. It was subsequent to these events and only after Walsh had worked out his financial arrangement with movant that he obtained a copy of the discovery from Rogers.

8. Walsh further testified that it was his belief that the police officers who were supervising movant's work as a confidential informant were "dirty." When asked during cross examination whether dirty cops have the authority to tell people to commit crimes, he conceded that they do not and therefore, movant was not working under "real" public authority. Exhibit A, p. 35-36.

9. Movant testified that he always desired and intended to plead guilty and never wanted to proceed to trial. However, he did so based upon Walsh's advice that Judge Moore would sentence him harshly even with a plea agreement and Walsh's advice that he had a viable public authority defense.

10. Rogers testified that he always believed that movant wanted to plead guilty and was surprised when he learned that he had been fired. He further testified that after he read the Notice of Public Authority Defense, he contacted Walsh and advised him that, in Roger's opinion, such a defense would not work.

11. When the deadline for accepting the government's plea offer expired, the government filed a statutory sentencing enhancement pursuant to 21 U.S.C. § 851 based on two of movant's prior convictions, thereby increasing his statutorily required sentence upon conviction to mandatory life in prison.

12. Movant proceeded to trial relying on the public authority defense. On December 8, 2006, movant was convicted on all counts and was later sentenced to life in prison.

[CV-DE#41].

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel during their criminal proceedings. Strickland v. Washington, 466 U.S. 668, 684-85, 104

S.Ct. 2052, 80 L.Ed.2d 674 (1984).  This right extends to the plea-bargaining process, during which defendants are "entitled to the effective assistance of competent counsel." <u>Lafler v. Cooper</u>, --- U.S. ----, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012) (internal quotation marks omitted).  "[T]he right to adequate assistance of counsel cannot be defined or enforced without taking account of the central role plea bargaining plays in securing convictions and determining sentences." <u>Id.</u> at 1388.  In <u>Hill v. Lockhart</u>, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the Supreme Court held that the test established in <u>Strickland</u>, which addresses ineffective assistance of counsel at the trial stage, applies equally to the plea-bargaining process. <u>Hill</u>, 474 U.S. at 58-59, 106 S.Ct. 366; <u>see also</u> <u>Lafler</u>, 132 S.Ct. at 1384 (reaffirming that the <u>Strickland</u> analysis applies to ineffective-assistance-of-counsel claims arising out of the plea-bargaining process).

To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate both (1) that his counsel's performance was deficient, and (2) that he suffered prejudice as a result of that deficient performance. <u>Strickland</u>, 466 U.S. 668, 687-88 (1984).  "To establish deficient performance, a defendant must show that his counsel's representation fell below an objective standard of reasonableness in light of prevailing professional norms at the time the representation took place." <u>Cummings v. Sec'y for Dep't of Corr.</u>, 588 F.3d 1331, 1356 (11th Cir. 2009). Reviewing courts will thus not second-guess an attorney's strategic decisions, and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Strickland</u>, 466 U.S. at 689-90.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." <u>Id.</u>. at 694.   "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>   Prejudice is thus established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).   A defendant must satisfy both the deficiency and prejudice prongs set forth in <u>Strickland</u> to obtain relief on a claim of ineffective assistance of counsel.  <u>Strickland</u> 466 U.S. at 697.  Failure to establish either prong of the <u>Strickland</u> analysis is fatal, and makes it unnecessary to consider the other.  <u>Id.</u>

Supporting the duty to provide competent advice during the plea-bargaining process is the concomitant duty to conduct a reasonable investigation.  <u>See</u> <u>Titlow v. Burt</u>, 680 F.3d 577, 587 (6th Cir. 2012), *cert. granted* 81 U.S.L.W. 3276 (U.S. Feb. 25, 2013) (No. 12-414).  It is well established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." <u>Strickland</u>, 466 U.S. at 691.  The duty to investigate derives from counsel's basic function, which is "to make the adversarial testing process work in the particular case.'" <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986), *quoting* <u>Strickland</u>, 466 U.S. at 690.  "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." <u>Strickland</u>, 466 U.S. at 691.  "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 481, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000).   A purportedly strategic decision is not objectively reasonable "when the attorney has failed to investigate his options and make a reasonable choice between them." <u>Horton v. Zant</u>, 941 F.2d 1449, 1462 (11th Cir. 1991).   Accordingly, "[w]hen a lawyer fails to conduct a

16

substantial investigation into any of his client's plausible lines of defense, the lawyer has failed to render effective assistance of counsel." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1263 (11th Cir. 1992), *quoting* <u>House v. Balkcom</u>, 725 F.2d 608, 615, 617-18 (11th Cir.), *cert. denied*, 469 U.S. 870 (1984).

In order to establish prejudice in the context of a rejected plea offer,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

<u>Lafler</u>, 132 S.Ct. at 1385. As previously set forth, a "reasonable probability" as the Supreme Court has previously defined the term, "is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694. "This burden is relatively low, being less than a preponderance of the evidence." <u>Titlow</u>, 680 F.3d at 588, *citing* <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

Here, it is undisputed that Mr. Walsh strongly advised Movant to reject the government's plea offer in his initial discussions with Movant. It is further undisputed that, during these initial discussions, Walsh told Movant that Judge Moore would sentence him to "forty plus years" if Movant pled guilty, and that Walsh further told Movant that Movant had a viable "public authority" defense.[4] However, it is also undisputed that Mr. Walsh did not have specific

---

[4] The "public authority" defense is an affirmative defense, wherein the defendant seeks exoneration based on the fact that he reasonably relied on the authority of a government official to engage him in covert activity. <u>United States v. Baptista-Rodriquez</u>, 17 F.3d 1354, 1368 n.18 (11th Cir. 1994)(citations omitted).

information about Movant's criminal history at the time, had not seen or reviewed any of the discovery in the case, and had no understanding of the underlying evidence against Movant when he rendered this advice.  Mr. Walsh thus had no basis for his advice regarding a probable sentence, the reasonableness of the plea offer, or the viability of a "public authority" defense at trial. Indeed, Mr. Walsh admitted on cross examination that, based on his belief that Movant was working with "dirty cops," Movant was not working under "real" public authority.[5]  Under these circumstances, Walsh's performance during the plea-bargaining stage was clearly deficient.  See Titlow, 680 F.3d at 591 (substitute counsel provided ineffective assistance at plea-bargaining stage where counsel did not attempt to learn facts of case before offering advice, even though evidence against defendant should have had major impact on attorney's advice); see also Horton, 941 F.2d at 1462 (a purportedly strategic decision is not objectively reasonable when the attorney has failed to investigate).[6]

     With regard to prejudice, there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different.  First, it is undisputed that Movant always wanted to plead guilty, and never intended to proceed to trial. Movant signed the plea agreement with the understanding that Mr. Rogers was to provide it to the government if, after consulting with his family, Movant did not change his mind.[7]  It is further

_____

     [5]The validity of the public authority defense depends upon whether the government agent in fact had the authority to empower the defendant to perform the acts in question.  Baptista-Rodriguez, 17 F.3d at 1368 n.18 (citation omitted).

     [6]As set forth above, the government effectively conceded that, based on Mr. Walsh's own testimony at the evidentiary hearing, Mr. Walsh was deficient in advising Movant to reject the plea offer.

     [7]The court is cognizant that the date on the plea agreement next to Movant's signature is August 7, 2006.  However, it is undisputed that the formal written plea offer was not tendered until August 29, 2006, and that Movant signed it when Mr. Rogers visited Movant at FDC thereafter, shortly

undisputed that the only reason Movant changed his mind is because he consulted with Mr. Walsh.  Moreover, there is no indication of any intervening circumstance that would have caused the prosecution to withdraw the offer, and the government does not contend that there was.  As such, the first element of the prejudice analysis in the context of a rejected plea offer is satisfied.  <u>See</u> <u>Lafler</u> 132 S.Ct. at 1385 (to establish prejudice defendant must show a reasonable probability that plea offer would have been presented to the court).

Next, there is nothing unusual about the plea agreement in this case that would lead to the conclusion that the court would not have accepted its terms.  Rather, the plea agreement contains standard terms that have long-been used in this court on a regular basis.  Simply stated, there is nothing in the record to suggest that the court would not have accepted what amounts to a routine plea agreement in this case.  Indeed, the court accepted pleas from all of Movant's co-defendants in the underlying criminal case, including from Deshone Stacy, who pled guilty only after obtaining a reversal of his conviction from the Eleventh Circuit after having been convicted at trial [<u>See</u> CR-DE##90, 91 & 153; 142, 159 & 160; 112, 141 & 158; 174, 372, 402 & 407].  The second element of the prejudice analysis in the context of a rejected plea offer is thus also satisfied.  <u>See</u> <u>Id.</u> (to establish prejudice defendant must show reasonable probability that terms of the plea offer would have been accepted by the court).

Finally, there is every reason to conclude that the Movant's conviction and sentence would have been less severe than the judgment and sentence that was in fact imposed.  It is undisputed that, under the terms of the plea agreement, the government would

---

before the offer was due to expire.  The court thus finds the August 7, 2006 date next to Movant's signature to be a scrivener's error, and that Movant signed the plea agreement on September 7, 2006.  <u>See</u> Gov't Exh. 1, Letter from Stephen J. Rogers dated November 15, 2006, p.3.

have dismissed Count Two of the indictment, of which Movant was convicted at trial.  In addition, the government would have filed the § 851 statutory sentencing enhancement based on only one of Movant's prior felony drug convictions, rather than based on multiple convictions.  This would have reduced Movant's statutory mandatory minimum sentence to 20 years from the mandatory minimum sentence of life that Movant received after being convicted at trial.  Moreover, based on the terms of the plea agreement, it appears that Movant's guideline imprisonment range would have been 240 - 293 months.[8]  In addition, the plea agreement contained a stipulation that the parties would jointly agree that they would recommend that the court impose a sentence within the advisory sentencing guideline range and that, although not binding on the court, that the court neither depart upward nor downward therefrom. The third element of the prejudice analysis in the context of a rejected plea offer is thus also satisfied.  See Id. (to establish prejudice defendant must show a reasonable probability conviction and sentence would have been less severe than the judgment and sentence that was in fact imposed).

---

[8]The plea agreement contained a stipulation that, although not binding on the probation office or the court, the parties would jointly recommend that, for purposes of sentencing, the court find that the quantity of narcotics attributable to Movant was at least 150 grams but less than 500 grams of crack cocaine, and that Movant receive a three-level sentencing enhancement based on his role as manager or supervisor or criminal activity involving five or more participants.  The plea agreement further provided that the government would recommend a three-level reduction of Movant's offense level for timely acceptance of responsibility.  Under the 2006 guidelines, this would have resulted in a base offense level of 34 pursuant to §2D1.1(a)(3) based on the quantity of drugs attributable to Movant.  Movant's base offense level would then have been increased by three levels based on his role in the offense and then reduced again by three levels based on his timely acceptance of responsibility, thereby resulting in a total offense level of 34.  A total offense level of 34 coupled with Movant's criminal history category of V would have yielded a guideline sentencing range of 235 - 293 months.  However, the statutorily required minimum term of imprisonment would have been twenty years since government would have filed the § 851 sentencing enhancement based on one of Movant's prior convictions.  This would have resulted in a guideline imprisonment range of 240 - 293 months pursuant to §5G1.1(c)(2).

Having concluded that counsel was deficient in advising Movant to reject the plea offer and that Movant was prejudiced thereby,[9] the question of what constitutes an appropriate remedy remains to be addressed.   In Lafler v. Cooper, supra, the Supreme Court addressed the appropriate remedy in cases where, as here, ineffective assistance of counsel has caused the rejection of a plea offer, leading to a trial and a more severe sentence.   The court noted that "[t]he time continuum makes it difficult to restore the defendant and the prosecution to the precise positions they occupied prior to the rejection of the plea offer, but that baseline can be consulted in finding [an appropriate] remedy . . ." Id. at 1381.  Where, as here, the offer was to plead to less counts than originally charged and a mandatory sentence confines the judge's sentencing discretion after trial, a resentencing will not suffice.  See Id.  In such cases, rather, the proper exercise of discretion is to require the prosecution to reoffer the plea proposal.  See Id. at 1389; see also Titlow, 680 F.3d at 592-93. Once this occurs, and assuming the defendant accepts the renewed offer, the court may  then exercise its discretion to fashion a sentence that both remedies the constitutional violation and does not unnecessarily infringe on the competing interests of the parties.  See Lafler, 132 S.Ct. at 1388-89; Titlow, 680 F.3d at 592-93.

Here, however, the having the prosecution simply reoffer the original plea agrement verbatim would not necessarily restore the parties to the positions they would be in had the constitutional violation not occurred.  Specifically, because of intervening changes in the law under the Fair Sentencing Act of 2010 ("FSA"), corresponding changes to the drug-quantity amount involved would

---

[9]Again, as previously set forth, the government also effectively conceded prejudice.

have to be made to restore the parties to the original baseline that was intended.

The Fair Sentencing Act of 2010, Pub.L. No. 111–220, 124 Stat. 2372 (2010) ("FSA") reduced the penalties for crack cocaine offenses so that the disparity in sentencing between offenses involving crack and powder cocaine decreased from 100:1 to approximately 18:1 and reduced the mandatory minimum for violations of §841(a), the crime to which Movant pled guilty.  The statute amends the sentencing provisions in 21 U.S.C. §841(b)(1)(A)&(B) by raising from 50 grams to 280 grams and from five to 28 grams, respectively, the amount of crack necessary to trigger the applicable sentencing ranges under those provisions.  Fair Sentencing Act of 2010, Pub.L. 111–220, 124 Stat. 2372, 2372–73. Amendment 750 to the United States Sentencing Guidelines further implements the FSA by, *inter alia*, reducing the guideline sentencing ranges for certain federal crack cocaine offenders.  <u>See</u> U.S.S.G. §1B1.10.  Amendment 750 was promulgated pursuant to the United States Sentencing Commission's authority under 28 U.S.C. §994(o).  <u>See</u> U.S.S.G., 2010 Supp. to App. C, Amendment 750 (effective Nov. 1, 2010).

In this case it is undisputed that the prosecution's intent was to permit Movant to enter a plea that would subject him to a mandatory minimum term of incarceration of 20 years, rather than life, and that Movant would have accepted such a plea but for Walsh's deficient advice.  At the time, however, the drug-quantity amount necessary to trigger the enhanced 20-year mandatory minimum term of imprisonment under §841(b)(1)(A)(iii) based on one prior conviction was 50 grams or more of cocaine base.  The original plea agreement thus provided that Movant would plead guilty to Count One of the indictment, which charged Movant with conspiracy with intent to distribute 50 grams of more of cocaine base.  Today, however, the drug-quantity amount necessary to trigger the enhanced 20-year

22

mandatory minimum term of imprisonment under §841(b)(1)(A)(iii) based on one prior conviction is 280 grams or more of cocaine base. Therefore, the prosecution's offer would have to be amended accordingly. Such an amendment would be equitable in light of the fact that the PSI discloses that the evidence in this case indicated that Movant was responsible for between 15 and 50 kilograms of cocaine and that, from this amount, between 500 grams and one and one-half kilograms of cocaine base was produced [PSI, ¶38]; see also LaFler, 132 S.Ct. at 1388 ("Sixth Amendment remedies should be tailored to the injury suffered [and] must neutralize the taint of [the] constitutional violation, while at the same time not grant a windfall to the defendant . . .")(internal quotations and citations omitted).[10]

Conclusion

Based upon the foregoing, it is recommended that the motion to vacate be GRANTED, and that the government be required to reoffer Movant the original plea agreement, with the  referenced changes regarding the drug-quantity amounts due to the passage of the FSA. Assuming Movant accepts the renewed plea offer, it is recommended that all necessary further proceedings be conducted to effectuate the original intent of the parties, and that Movant be resentenced accordingly.[11]

---

[10]The plea agreement further provided that, although not binding on the probation office or the court, the parties would jointly recommend that the court find that, for purposes of §2D1.1(a) and (c) of the Sentencing Guidelines, the drug-quantity amount was at least 150 but less than 500 grams of cocaine base. As previously noted, the Sentencing Guidelines have also since been amended in order to implement the FSA. The prosecutions's plea offer would thus also need to be amended to reflect an appropriate range under the drug-quantity tables in the current guidelines.

[11]Because the court concludes that Movant is entitled to relief on his claim of ineffective assistance of counsel during the plea-bargaining process and because the parties have made clear that the remedy they seek is to permit Movant to accept a plea on the same material terms as those in the original offer, the court does not reach Movant's remaining claims, which relate to alleged ineffective assistance of counsel at trial and on appeal. See Lafler 132 S.Ct. at 1389 (noting need to find "a remedy that does not require the

23

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 28th day of March, 2013.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   Ira N. Loewy, Esq.
      Shohat, Loewy & Shohat
      800 Brickell Ave., PH 2
      Miami, FL 33131

      Corey Steinberg, AUSA
      United States Attorney's Office
      500 E. Broward Blvd., 7th Floor
      Ft. Lauderdale, FL 33394

---

prosecution to incur the expense of conducting a new trial").